**C.A. No. 23-1096**

D. Ct. No. 4:22-CR-00974-JGZ-JR

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OLEGARIO LARES-DE LA ROSA,

Defendant-Appellant.

ON APPEAL FROM A JUDGMENT OF THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF ARIZONA

-----------------------------------------------------------
**BRIEF OF APPELLEE**
-----------------------------------------------------------

GARY M. RESTAINO
United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief

CRAIG H. RUSSELL
Assistant U.S. Attorney
405 W. Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Attorneys for Appellee

Date Electronically Filed: October 7, 2024

# I. **TABLE OF CONTENTS**

Page

I. TABLE OF CONTENTS ................................................................. i

II. TABLE OF AUTHORITIES ......................................................... ii

III. STATEMENT OF JURISDICTION ............................................. 1

    A.    District Court Jurisdiction ................................................. 1

    B.    Appellate Court Jurisdiction ............................................ 1

    C.    Timeliness of Appeal ...................................................... 1

    D.    Bail Status ....................................................................... 1

IV. ISSUES PRESENTED .................................................................. 2

V. STATEMENT OF THE CASE ....................................................... 3

    A.    Nature of the Case; Course of Proceedings ..................... 3

    B.    Statement of Facts .......................................................... 4

VI. SUMMARY OF ARGUMENTS .................................................. 14

VII. ARGUMENTS ........................................................................... 15

    A.    The District Court Did Not Plainly Err in Providing Jury Instructions That Were Clear, Legally Correct, and Tracked This Court's Pattern Jury Instruction. ......................................................... 15

    B.    The District Court Did Not Plainly Err or Abuse Its Discretion In Admitting Lay Opinion Testimony, Nor Did It Plainly Err By Failing to Provide A Dual Role Testimony Instruction Because Agent Gomez Provided No Expert Testimony. Any Error Was Harmless and Not Plain. ................................................ 23

    C.    The Defendant Acknowledges That He Cannot Show Plain Error Regarding The Constitutionality of 18 U.S.C. § 922(g)(1). ............... 36

    D.    The District Court Properly Considered Acquitted Conduct At Sentencing, And The Defendant's Contrary Argument Is Foreclosed, As He Acknowledges On Appeal. .................................. 39

VIII. CONCLUSION ......................................................................... 42

IX. STATEMENT OF RELATED CASES ....................................... 43

X. CERTIFICATE OF COMPLIANCE FOR BRIEFS (Form 8) ....................... 44

## II. <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Benatar v. United States*,
    209 F.2d 734 (9th Cir. 1954) ...................................................17

*District of Columbia v. Heller*,
    554 U.S. 570 (2008),........................................................ 36, 37

*Henderson v. United States*,
    568 U.S. 266, 269 (2013)....................................................15

*Johnson v. I.N.S.*,
    971 F.2d 340 (9th Cir. 1992) ..............................................31

*Jones v. United States*,
    527 U.S. 73 (1999)..............................................................17

*Marley v. United States*,
    567 F.3d 1030 (9th Cir. 2009). ...........................................39

*New York State Rifle and Pistol Association v. Bruen*,
    527 U.S. 1 (2022)................................................................36

*Puckett v. United States*,
    556 U.S. 129 (2009)............................................................15

*Smith v. United States*,
    599 U.S. 236 (2023)............................................................20

*United States v. Barragan*,
    871 F.3d 689 (9th Cir. 2017)..........................................29, 33

*United States v. Canada*,
    103 F.4th 257 (4th Cir. 2024) .............................................38

*United States v. Chi Mak*,
    683 F.3d 1126 (9th Cir. 2012). ...........................................36

*United States v. Ching Tang Lo*,
  447 F.3d 1212 (9th Cir. 2006) ...............................................................17

*United States v. Doe*,
  705 F.3d 1134 (9th Cir. 2013). ..............................................................15

*United States v. Dominguez Benitez*,
  542 U.S. 74 (2004) ...................................................................... 16, 23

*United States v. Dorsey*,
  677 F.3d 944 (9th Cir. 2012) .................................................................19

*United States v. Duarte*,
  101 F.4th 657 (9th Cir. 2024). ...............................................................38

*United States v. Duarte*,
  No. 22 WL 3443151, at *1 (9th Cir. July 17, 2024).............................38

*United States v. Freeman*,
  498 F.3d 893 (9th Cir. 2007) .................................................................29

*United States v. French*,
  748 F.3d 922 (9th Cir. 2014) .................................................................19

*United States v. Gadson*,
  763 F.3d 1189 (9th Cir. 2014). ................................................ 24, 28, 29

*United States v. Gaskins*,
  849 F.2d 454 (9th Cir. 1988) .................................................................21

*United States v. Gonzalez*,
  658 Fed. Appx. 867 (9th Cir. 2016).......................................................34

*United States v. Gonzalez*,
  906 F.3d 784 (9th Cir. 2018) .................................................................21

*United States v. Gonzalez-Aparicio*,
  663 F.3d 419 (9th Cir. 2011) .................................................................15

*United States v. Haischer,*
  780 F.3d 1277 (9th Cir. 2015) ...............................................................32

*United States v. Holguin,*
  51 F.4th 841 (9th Cir. 2022) ....................................................... 30, 35

*United States v. Horowitz,*
  756 F.2d 1400 (9th Cir. 1985) ...............................................................22

*United States v. Hui Hsiung,*
  778 F.3d 738 n.4 (9th Cir. 2015) ...........................................................16

*United States v. Koziol,*
  993 F.3d 1160 n. 21 (9th Cir. 2021) ......................................................24

*United States v. Leon H.,*
  365 F.3d 750 (9th Cir. 2004) .................................................................39

*United States v. Lopez,*
  484 F.3d 1186 (9th Cir. 2007) ..................................................... 21, 22

*United States v. Mende,*
  43 F.3d 1298 (9th Cir. 1995) .................................................................32

*United States v. Mercado,*
  474 F.3d 654 (9th Cir. 2007) .................................................................40

*United States v. Miller,*
  546 F.2d 320 (9th Cir. 1976) .................................................................23

*United States v. Morfin,*
  151 F.3d 1149 (9th Cir. 1998). ..............................................................17

*United States v. Olano,*
  507 U.S. 725 ...........................................................................................35

*United States v. Perez-Garcia,*
  96 F.4th 1166 (9th Cir. 2024) ................................................................37

iv

*United States v. Phillips*,
827 F.3d 1171 (9th Cir. 2016) ...................................................38

*United States v. Powell*,
469 U.S. 57 (1984)......................................................................22

*United States v. Rahimi*,
144 S.Ct. 1889 (2024)................................................................37

*United States v. Reyes-Alvarado*,
963 F.2d 1184 (9th Cir. 1992) ...................................................31

*United States v. Schaff,*
948 F.2d 501 (9th Cir. 1991) .....................................................32

*United States v. Shabani*,
513 U.S. 10 (1994)......................................................................21

*United States v. Singh*,
979 F.3d 697 (9th Cir. 2020) .............................................. 16, 23

*United States* v. *Sullivan,*
522 F.3d  967 (9th Cir. 2008) ............................................. 21, 22

*United States v. Torralba-Mendia*,
784 F.3d 652 (9th Cir. 2015). ....................................................24

*United States v. Varela*,
993 F.2d 686 (9th Cir. 1993) .....................................................15

*United States v. Vera*,
770 F.3d 1232 (9th Cir. 2014) ...................................................33

*United States v. Vongxay*,
594 F.3d 1111 (9th Cir. 2010) ...................................................36

*United States v. Warren*,
25 F.3d 890 (9th Cir. 1994) .......................................................20

v

*United States v. Watts*,
   519 U.S. 148 (1997) ..........................................................................40

*United States v.* Wells*,
   879 F.3d 900 (9th Cir. 2018)…………………………………..…………..24

*United States v. Whitney*,
   No. 22-10326 WL 1429461, at *2 (9th Cir. Apr. 3, 2024)...................37

*Whitfield v. United States*,
   543 U.S. 209 (2005) ..........................................................................21

## **STATUTES**

8 U.S.C. § 1324(a)(1)(A) ..........................................................................3

18 U.S.C. § 371 ........................................................................................21

18 U.S.C. § 922(g)(1).................................................................. 2, 14, 36, 38

18 U.S.C. § 922(a)(1)(A)..............................................................................3

18 U.S.C. § 1203(a) ....................................................................................3

18 U.S.C. § 3231 ..........................................................................................1

28 U.S.C. § 1291 ..........................................................................................1

## **RULES**

Fed. R. App. P. 4(b) ....................................................................................1

Fed. R. Crim. P. 30(d), 52(b);...................................................................15

Federal Rule of Evidence 701 ...................................................................28

## OTHER AUTHORITIES

U.S.S.G. § 1B1.2(d) ...................................................................39

U.S.S.G. §  2A4.1(b)(1). ........................................... 14, 40, 41

U.S.S.G. § 3D1.2 .......................................................................39

U.S.S.G. § 3D1.4 .................................................... 14, 40, 41

# III. STATEMENT OF JURISDICTION

## A. District Court Jurisdiction

The district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231 because the defendant-appellant, Olegario Lares-De La Rosa ("the defendant"), was charged with a federal crime. (2-ER-79.)[1]

## B. Appellate Court Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 based on the entry of the final judgment by the district court on June 2, 2023. (5-ER-931-934.)

## C. Timeliness of Appeal

After the entry of the final judgment on June 2, 2023, the defendant filed a notice of appeal on the same day. (5-ER-939.) The notice was timely pursuant to Fed. R. App. P. 4(b).

## D. Bail Status

The defendant is currently in custody, serving his sentence, and is expected to be released on August 9, 2037, according to the Bureau of Prisons.

---

[1] "ER" refers to the Excerpts of Record, and "SER" refers to the Supplemental Excerpts of Record, followed by the page number(s). The defendant has provided the PSR to this Court under seal via the Ninth Circuit Appellate ECF system.

1

# IV. <u>ISSUES PRESENTED</u>

A.  Whether the district court plainly erred when it provided the jury an instruction that was clear, legally accurate, and tracked this Court's pattern jury instruction.

B.  Whether the district court plainly erred or abused its discretion when it admitted lay opinion testimony that was based upon the witness's personal observations and did not require specialized expertise or knowledge.

C.  Whether the district court plainly erred when it failed to hold that 18 U.S.C. § 922(g)(1) violates the Second Amendment, where the defendant acknowledges that his argument is foreclosed by precedent.

D.  Whether the district court erred when it considered acquitted conduct in calculating the defendant's sentencing guidelines, where the defendant acknowledges that his argument is foreclosed by precedent.

## V.  <u>STATEMENT OF THE CASE</u>

**A.**    <u>**Nature of the Case; Course of Proceedings**</u>

On October 19, 2022, a Tucson grand jury in the District of Arizona returned a superseding indictment charging the defendant with one count of conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a) (count 1), two counts of hostage taking, in violation of 18 U.S.C. §1203(a) (counts 2 and 3), one count of conspiracy to transport aliens for profit, in violation of 8 U.S.C. § 1324(a)(1)(A) (count 4), two counts of transportation of aliens for profit, in violation of 8 U.S.C. § 1324(a)(1)(A) (counts 5 and 6), and one count of illegal possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1) (count 7).  (2-ER-79-82.)

Before trial, the defendant pled guilty to the firearm count.  (2-ER-75-76.) After a trial, the jury convicted the defendant of counts 1, 4, 5, and 6, namely conspiracy to hostage take, conspiracy to transport aliens for profit, and two counts of transportation of aliens for profit.  (5-ER-884-885.)  The jury acquitted him on the two counts of hostage taking.  (*Id*.)

The district court imposed a 216-month sentence for conspiracy to hostage take and concurrent 120-month sentences for the alien transportation and prohibited possessor counts, followed by a 36-month term of supervised release.  (5-ER-931.)[2]

---

[2]  Co-defendant Ivan Borboa-Ruiz (Borboa) pleaded guilty to conspiracy to hostage take and unlawful possession of a firearm by an alien and was sentenced to

**B.** **Statement of Facts**

The defendant's convictions arose from his involvement in a conspiracy to kidnap aliens in the southern Arizona desert and collect ransom money from their relatives.  Two victims were kidnapped at gunpoint in the desert south of Tucson and assaulted.  They were kept locked away in a stash house for several days while the kidnappers demanded large amounts of ransom money from family members. The defendant helped make arrangements to collect ransom money and, while armed and wearing a mask, drove the victims to a Home Depot store where agents rescued the victims and arrested the defendant.  The defendant's various claims of error on appeal lack merit, and any error was harmless in light of the overwhelming evidence of his guilt and other factors.  This Court should affirm.

1. The Victims Are Kidnapped While Trying To Enter The United States Through The Desert South Of Tucson.

Victims J.P.-M. and D.P.-M. are cousins from Vera Cruz, Mexico.  (4-ER-697.)  They decided to come to the United States to work construction in New York and made arrangements with a smuggling organization. (4-ER-698.)  They travelled to Sonora, Mexico and were taken to a house where they stayed for about two weeks. (4-ER-698-699.)  The two crossed illegally into the United States with a guide and were in the desert for four days.  (4-ER-700-702.)

---

168 months.  (5-ER-927.)  Co-defendant Julio Rodriguez-Rojas (Rodriguez) was arrested on November 22, 2023 and is awaiting trial.

4

On their last night in the desert, they were chased by armed men. (4-ER-704.) They tried to hide but eventually surrendered to the men who turned out to be kidnappers. (4-ER-705-706.) J.P.-M., D.P.-M., and four others were taken hostage by the kidnappers. (4-ER-705.) J.P.-M. was kicked in the head when he refused to tell the kidnappers his name. (4-ER-708.) The kidnappers took their cell phones and identification papers. (4-ER-709-712.)

The kidnappers brought them to a location where they were picked up by a truck. (4-ER-709-712.) The truck brought them to a house where they slept. (4-ER-714.) A man came to the house and gave them their cell phones so they could call family members. (4-ER-715.) J.P.-M. called his cousin Pablo Alvarado-Mendoza (Alvarado) who lives in New York. (4-ER-716.) Although he had been kidnapped, he told Alvarado he was fine and that he was with D.P.-M. (4-ER-718-719.) J.P.-M. and D.P.-M. stayed at the house for about five days while a ransom payment was arranged. (4-ER-720.) The door to their room was kept locked with screws from the outside. (4-ER-720.) They were the last hostages to leave the house. (4-ER-722.) Others were allowed to leave earlier because their ransom money had been paid. (*Id.*)

In the afternoon of April 8, 2022, the man running the stash house told J.P.-M. and D.P.-M. that a black car was waiting for them on the street outside the house. (4-ER-724.) The driver, later identified as the defendant, told them that he was not

5

taking them to New York.  (4-ER-725.)  The defendant was wearing a boonie hat and mask and was armed with a pistol.  (4-ER-726; 2-ER-076.)  The victims were in the vehicle for about 30 minutes when the defendant drove them to a Home Depot store.  (4-ER-727.)  The defendant exited the vehicle briefly to make a call and then told J.P.-M. and D.P.-M. to get out of the vehicle and go to a blue truck.  (4-ER-728.)

  2. <u>The Kidnappers Demand Money From The Victims' Cousin In Exchange For The Release Of J.P.-M. And D.P.-M.</u>

The victims' cousin, Pablo Alvarado-Mendoza (Alvarado), lived in New York and worked at a restaurant.  (5-ER-758.)  He received a call on April 5, 2022 from a man demanding $16,000 for the release of his cousins J.P.-M. and D.P.-M.  (5-ER-761.)  He could hear his cousins talking during the call.  (5-ER-762.)  Alvarado did not have $16,000 and tried to get it from his family members.  (5-ER-762.)  He went to the police in Astoria, New York, to report the kidnapping and they advised him to call the Tucson police.  (5-ER-762-763.)

Alvarado eventually contacted Homeland Security Investigations (HSI) agents in Tucson.  (5-ER-765.)  Agents told him to not make any payments and to allow them to investigate the case.  (5-ER-766.)  When Alvarado told the kidnappers that he did not have the money, they said J.P.-M. and D.P.-M. would be held longer.  (5-ER-767.)

At the agents' request, Alvarado asked the kidnappers for bank account information so he could deposit the ransom money. (5-ER-768.) The kidnappers sent bank account information by text message, which Alvarado passed on to agents. (5-ER-768-769.) The bank accounts belonged to Kassandra Lopez and Odali Ayon Rodriguez. (5-ER-770-771.)

Alvarado received about 15 calls from the kidnappers and recorded two of them for agents. (5-ER-772-773.) Agents told Alvarado they would pose as a family member and deliver ransom money. (5-ER-776-777.) At the agents' request, Alvarado told the kidnappers that he would check with family to see if they knew anyone in Phoenix who could deliver the money. (5-ER-776-777.)

3.  Agents Arrest The Defendant And Co-defendant Borboa-Ruiz at a Home Depot in Tucson.

After receiving information from Alvarado, agents started working on a rescue plan where they would pose as a family member and deliver the ransom money. (2-ER-206-210, 213-214.) Agents asked Alvarado to stall the kidnappers so they could plan the rescue. (2-ER-216-217.) Alvarado therefore told the kidnappers that a family member would contact them. (2-ER-216.)

An agent, posing as a family member, called the kidnappers and was able to speak with the victims. (2-ER-217.) Agents arranged to do the hostage exchange at a Home Depot in Tucson. (2-ER-222, 227-228.) The agent posing as a family member drove to the Home Depot in a blue Dodge Ram truck and parked near the

7

store.  (2-ER-228-229.)  The agent tried calling the kidnappers and told them he was trying to get the money together.  (2-ER-230.)  The kidnapper called back and wanted to meet in a bathroom to exchange the money.  (2-ER-234.)  The agent declined and told him that they could meet in his vehicle.  (2-ER-234.)

A man, later identified as co-defendant Borboa, came to the agent's car.  (2-ER-237.)  The agent exited his vehicle and shook hands with Borboa.  (2-ER-237-238.)  The two entered the agent's truck so Borboa could count the money.  (2-ER-238.)  Borboa counted the money and was satisfied.  (2-ER-241-242.)

As Borboa was counting the money, the agent saw a man, later identified as the defendant, wearing a camouflage boonie hat and a surgical mask and looking around in the parking lot.  (3-ER-254-256.)  A few minutes later, a black sedan driven by the defendant, along with two passengers who turned out to be J.P.-M. and D.P.-M., entered the area.  (3-ER-256-257.)

Borboa told the agent that J.P.-M. and D.P.-M. were nearby.  (3-ER-261.)  Borboa placed a call.  (3-ER-262.)  Meanwhile, the defendant exited the black sedan to receive a call.  (4-ER-727-728.)  After the call, the defendant gave J.P.-M. and D.P.-M. their phones and told them to walk towards the agent's truck.[3]  (4-ER-728.)  Borboa then told the agent they were on the way.  (3-ER-262-263.)

---

[3]  Agents learned later that Borboa had called Julio Rodriguez-Rojas, who in turn called the defendant.  (3-ER-490.)

Agents confirmed the two people in the defendant's sedan were J.P.-M. and D.P.-M. Agents took them to safety. (3-ER-263-5.) The defendant later admitted that he called a man named Moreno and told him that he had arrived at the Home Depot. (5-ER-907.) Moreno later called him back and said "[t]ell them to get out" and "go to a blue Ram." (5-ER-909-910.) After he received this call, the defendant released the victims. (5-ER-910-911.)

As he was returning to his vehicle, Borboa was arrested by agents. (3-ER-352.) Agents found a pistol, a loaded magazine, and two cell phones in Borboa's possession. (3-ER-352.) Agents also recovered the $16,000. (*Id.*)

After Borboa was arrested, the defendant fled the parking lot of the Home Depot at a high rate of speed. (3-ER-415.) Agents activated their lights and sirens and tried to stop his vehicle. (3-ER-370.) The defendant failed to yield. (*Id.*) Agents pursued the defendant to a nearby tire store. (3-ER-371.) The defendant ran from his vehicle into a wash and because his vehicle was not in park, it also went into the wash. (*Id.*) The defendant dropped an item which turned out to be a firearm. (3-ER-378-379, 396-398). After a brief pursuit on foot, the defendant was arrested. (3-ER-449.) Agents found three phones, a mask, and a boonie hat in the defendant's vehicle. (3-ER-425.)

4. <u>Text Messages And Call History Linking The Defendant To The Kidnapping</u>

Agents obtained search warrants for phones belonging to the defendant and Borboa. (4-ER-559-560.) The defendant's text messages helped demonstrate his active role in obtaining bank account information for ransom money deposits. In WhatsApp messages, for example. the defendant and co-defendant Rodriguez discussed bank accounts for family members to deposit ransom funds. (4-ER-561-570.)

On April 7, 2022, in a series of text messages with Odali Ayon Rodriguez, the defendant asked her for account information for two bank accounts. (4-ER-574-576.) Ayon Rodriguez sent the defendant a picture with bank account and routing numbers. (4-ER-577.)

In another series of text messages, the defendant asked Lizbeth Miranda to use her bank account to receive money. (4-ER-581.) Miranda sent the bank account and routing number to the defendant on April 7, 2022. (4-ER-581-582.) After the defendant asked her to check her account, Miranda sent the defendant a screen shot of a deposit receipt. (4-ER-583-584.)

After texting with Ayon Rodriguez and Miranda, the defendant sent their bank account information to co-defendant Rodriguez. (5-ER-900.) On April 7, 2022, there were texts between the defendant and co-defendant Rodriguez about whether

10

"7" or "8" will be received. (*Id*.) Ayon-Rodriguez's bank account information was then sent by the kidnappers to Alvarado to deposit ransom money. (5-ER-770-771.)

5. Expert Testimony About Alien Smuggling

HSI Special Agent Nestor Claudio provided expert testimony in this alien smuggling and hostage taking trial about alien smuggling organizations and their methodologies. (4-ER-626-692.) He did not know the facts of the case and was testifying as a "blind expert." (4-ER-632.) He is a native Spanish speaker and had extensive experience working undercover in drug trafficking and alien smuggling investigations. (4-ER-627-630.) He had testified in prior trials as an alien smuggling expert. (4-ER-632.)

The expert testified that most alien smuggling efforts begin in the alien's home country and the initial fee usually includes transportation to the final destination. (4-ER-633-634.) A mafia fee is generally paid to the Mexican cartel that controls the crossing area and is not included in the initial fee. (4-ER-635.) Aliens may have an extended wait at the border until they can cross into the United States. (4-ER-636-637.) The smuggling fee will vary between $8,000 and $15,000 depending on how the alien crosses the border. (4-ER-639.) If the alien is from a country such as Guatemala the fee could increase as much as $3,000, and it can spike for people from certain countries due to increased risk. (4-ER-640.)

11

The expert also testified based on his knowledge and experience that, after arriving in a border town, the alien will be turned over to a guide who will get him across the border and deliver them to a load driver. (4-ER-641.) Scouts will be on top of mountains to watch for Border Patrol and scouts can stay there for weeks to help with both alien smuggling and drug trafficking efforts. (4-ER-642-644.)

The expert also noted that alien smuggling coordinators and load drivers will use encrypted communications through which live location can be shared. (4-ER-645.) The coordinator will sometimes drop a "live pin" to show the driver the pickup location. (4-ER-645-646.) Scouts will help determine whether Border Patrol checkpoints are operating or not. (4-ER-648.) Load drivers will bring aliens to stash houses and another driver will take them from the stash house to the final destination. (4-ER-650-651.) Aliens generally pay the first portion of their fee at the stash house and the last portion at their final destination. (4-ER-656.)

The expert also testified that rip crews will rob other smuggling organizations of the people they are guiding in order to receive money. (4-ER-657.) Smugglers will take phones away from aliens to keep them from disclosing their location. (4-ER-663-664.) In addition, the agent noted that people involved in alien smuggling will use code words. (4-ER-678-679.) A smuggling load driver would not normally obtain bank accounts for a money transfer (4-ER-685), and people will lend out their

bank accounts to facilitate smuggling payments for a five to ten percent fee (4-ER-691-692).

6.      Verdict and Sentencing

The jury found the defendant guilty of conspiracy to commit hostage taking (Count 1), conspiracy to transport aliens for profit (Count 4), and transportation of aliens for profit (Counts 5 and 6).  (5-ER-884-885.)  The jury acquitted the defendant on the two counts of hostage taking (Counts 2 and 3).  (*Id*.)  The district court imposed a sentence of 216 months on Count 1 and concurrent 120-month sentences on Counts 4, 5, 6, and 7.  (1-ER-54.)  The court further imposed three year concurrent terms of supervised release. (1-ER-55.)

The defendant now appeals his convictions.[4]

---

[4]  Additional facts are included in the argument section.

# VI.  **SUMMARY OF ARGUMENTS**

A.    The district court did not plainly err when it gave a jury instruction on the conspiracy to hostage take count that was clear, legally correct, and tracked this Court's pattern jury instruction.  Any error was harmless in light of the record and the overwhelming evidence of the defendant's guilt.

B.    The district court did not plainly or otherwise err when it allowed an agent to provide lay opinion testimony that was based on his personal observations made during the investigation and did not require specialized knowledge or expertise.  Moreover, much of the testimony to which the defendant objects, he elicited, so any error was invited.  The district court did not plainly err in not giving an instruction sua sponte on how to evaluate dual role testimony because the agent did not testify as an expert.  Any error was harmless and not plain.

C.    The district court did not plainly err in failing to hold that 18 U.S.C. § 922(g)(1) violates the Second Amendment.  The defendant acknowledges that his contrary argument is foreclosed by precedent.

D.    The district court correctly considered acquitted conduct in applying enhancements under U.S.S.G. § 3D1.4 and § 2A4.1(b)(1).  The defendant acknowledges that his contrary argument is foreclosed by precedent.

14

# VII.  ARGUMENTS

## A.  The District Court Did Not Plainly Err in Providing Jury Instructions That Were Clear, Legally Correct, and Tracked This Court's Pattern Jury Instruction.

### 1.  Standard of Review

Unless a defendant raises his "specific objection and the grounds for the objection before the jury retires," instructional claims are reviewed for plain error.  Fed. R. Crim. P. 30(d), 52(b); *United States v. Varela*, 993 F.2d 686, 688 (9th Cir. 1993) ("A general objection to the instruction does not suffice.").  To justify relief under plain-error review, defendants must show "(1) an error; (2) that is plain; (3) that affects substantial rights; and, if (1)-(3) are met, (4) seriously affects the fairness, integrity, or public reputation of the proceeding."  *United States v. Doe*, 705 F.3d 1134, 1148 (9th Cir. 2013).

"Meeting all four prongs is difficult."  *Puckett v. United States*, 556 U.S. 129, 135 (2009).  First, there must be unwaived error.  *Id.*  "To be plain, the error must be clear or obvious, and an error cannot be plain where there is no controlling authority on point."  *United States v. Gonzalez-Aparicio*, 663 F.3d 419, 428 (9th Cir. 2011) (quotations omitted); *see Henderson v. United States*, 568 U.S. 266, 269 (2013) (requiring issue to be "settled in the defendant's favor" at "time of appellate review").  For an error to affect substantial rights, "a defendant normally must make a specific showing of prejudice," *Puckett*, 556 U.S. at 135, 142 (quotations omitted),

15

meaning that the error had a "substantial and injurious effect" on the verdict. *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004) (quotations omitted). Finally, "[e]ven after a reviewing court finds plain error under this three-part rubric, relief remains discretionary," *United States v. Hui Hsiung*, 778 F.3d 738, 747 n.4 (9th Cir. 2015), and defendants must show "a miscarriage of justice," *United States v. Singh*, 979 F.3d 697, 728 (9th Cir. 2020) (quotations omitted).

The defendant did not raise his argument below and concedes this Court should review for plain error. (Op. Br. at 28-29.)

2.    Argument

The district court instructed the jury that, in order to convict the defendant for conspiring to hostage take, it must find that the "defendant became a member of the conspiracy, knowing at least one its objects and intending to help accomplish it." (2-ER-105.)   The defendant claims for the first time that the district court's conspiracy instruction was erroneous.   He newly argues that the district court's instruction did not make clear that, to convict him of conspiracy to hostage take, the jury had to find that he knew the object of the conspiracy was to hostage take. (Op. Br. at 32.)   He further contends that the jury could have convicted him if it found that one of the objects was transporting aliens and he merely knew of that object. (*Id*.)   The crux of his argument is that, by not explicitly defining the object of the conspiracy as "hostage taking", the district court allowed the jury to convict him

16

even if it found he had no knowledge of, or involvement in, the hostage taking. (Op. Br. at 32-35.) The defendant is mistaken, and he cannot show that this instruction was plainly erroneous. *See United States v. Ching Tang Lo*, 447 F.3d 1212, 1228 (9th Cir. 2006) ("[A] jury instruction rarely justifies reversal of a conviction for plain error.") The jury instruction tracked this Court's pattern jury instruction, was clear and legally accurate, and not misleading.

This Court reviews allegedly confusing jury instructions in the context of the entire trial to determine whether they were misleading or inadequate to guide the jury's deliberations. *United States v. Morfin*, 151 F.3d 1149, 1151 (9th Cir. 1998). Courts review jury instructions as a whole rather than scrutinizing discrete words or phrases in isolation. *Jones v. United States*, 527 U.S. 73, 391-92 (1999). This Court has held that "[i]solated excerpts are not to be considered apart from their context, and, so considered, are not to be tortured into constituting error." *Benatar v. United States*, 209 F.2d 734, 742-43 (9th Cir. 1954).

First, the district court's conspiracy instruction draws on this Court's pattern jury instruction, which states "[T]he defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it . . . " *See* Ninth Circuit *Manual of Model Criminal Jury Instructions*, 11.1 (2024). The district court did not err when it instructed the jury based upon this Court's instruction.

17

Second, the charge on the conspiracy to hostage take was not misleading or confusing. The district court told the jury that the "defendant is charged in **Count One** of the indictment with conspiring to hostage take…". (2-ER-105.) The charge also required the government to prove that there was "an agreement between two or more people to commit the crime of hostage taking." (*Id*.) The next element required the government to prove the defendant became a member of the hostage taking conspiracy "knowing at least one of its objects and intending to help accomplish it." (*Id*.) The charge also set forth the elements the crime of hostage taking. (*Id*.) The charge here repeatedly references hostage taking and makes no reference at all to transporting aliens. The instruction required the jury to find the defendant joined not just any conspiracy – but a hostage taking conspiracy. Thus, it was not confusing and did not mislead the jury into convicting the defendant without determining his knowledge of, or involvement in, the hostage taking conspiracy.

Third, the defendant overlooks other instructions that directly refute his claim. The district court instructed the jury that a person "who has no knowledge of a conspiracy, but happens to act in a way which furthers some object or purpose of the conspiracy, does not thereby become a conspirator." (2-ER-105-107.) This instruction undermines the defendant's suggestion that the jury could have convicted the defendant without finding he had knowledge of the hostage taking. Jurors are presumed to follow the instructions. *See United States v. Dorsey*, 677 F.3d 944, 955

18

(9th Cir. 2012) (there is a strong presumption that jurors follow instructions); *see also United States v. French*, 748 F.3d 922, 938 (9th Cir. 2014) ("the crucial inquiry . . . is how the jury would have reasonably understood the challenged instruction in the context of the instructions as a whole").

<u>Fourth</u>, the context of the trial and the parties' arguments help eliminate any possible confusion. In opening statement, the defendant conceded that he was guilty of transporting aliens. (2-ER-166; 5-ER-856.) Thus, the government spent most of its closing argument addressing the defendant's knowledge of, and involvement in, the hostage taking conspiracy. The government told the jury that the defendant had to be a "knowing and active participant in the conspiracy". (5-ER-835.) It also made other comments addressing hostage-taking:

> "[T]he evidence must show beyond a reasonable doubt that the defendant acted with knowledge and intention of helping that person commit conspiracy to hostage take and hostage taking." (5-ER-839.)

> "So we are not contending – we never did – that he's the individual who actually kidnapped them, but we're saying he knew and he was participating in the whole scheme to kidnap people for money." (5-ER-840.)

> "He's armed to ensure that they don't lose, quote-unquote, the contraband that will get them the $16,000." (5-ER-844.)

> "That's how desperate he is to get away. And why? Because he's not just alien smuggling. He never was just alien smuggling. Alien smuggling may have been part of his business, but he elevated it and his cohorts elevated it to hostage-taking, and that's why he goes to all those desperate measures to get away". (5-ER-852.)

19

"They are released when [the defendant] gets the call, which meant the ransom had been made. The defendant is no longer alien smuggling. He is actively engaged in and actively participating in hostage-taking. It's the next step up, and he did, he took it knowingly, he took it willingly, and he actively participated." (4-ER-855.)

"If he did not know they were hostages, why cover your face?" (4-ER-871.)

The trial was acutely focused on the defendant's culpability for hostage taking. The defendant has failed to show that the brief, isolated portion of the jury instruction he cites caused the jury to convict him without finding he had knowledge of the hostage taking. Indeed, such an interpretation is contrary to the instructions and the record as a whole, as noted above. *See United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) ("We review the instructions as a whole and consider how the jury would have reasonably understood them in the context of the entire trial.")

The defendant also argues that the acquittal on the two hostage taking counts (that were based on an aiding and abetting theory) demonstrate that the jury was confused by the instruction. (Op. Br. at 35-36.) This is pure speculation. *See Smith v. United States*, 599 U.S. 236, 252-253 (2023) ("[I]t is impossible for a court to be certain about the ground for [a] verdict without improperly delving into the jurors' deliberations . . ."). Even if this Court could glean any meaning from these acquittals, criminal liability for conspiracy and "aiding and abetting" is significantly different and the jury's verdict was not inconsistent. Nor would alleged inconsistency warrant reversal.

20

There is a material distinction between the elements of aiding and abetting and criminal conspiracy. Aiding and abetting the commission of a specific crime includes four elements: (1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent to commit the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that the principal committed the underlying offense. *United States v. Gaskins,* 849 F.2d 454, 459 (9th Cir. 1988). The defendant generally must "associate himself with the venture . . . participate in it as something he wish[es] to bring about, and [sought by] his action to make it succeed." 484 F.3d at 1199 (internal quotation marks omitted).

By contrast, a classic criminal conspiracy as charged in 18 U.S.C. § 371 is broader. The government need only prove "(1) an agreement to engage in criminal activity, (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States* v. *Sullivan,* 522 F.3d 967, 976 (9th Cir. 2008) (internal quotation marks omitted). Indeed, a hostage taking conspiracy does not even require commission of an overt act in furtherance of the conspiracy.[5]

---

[5] When the applicable statute is silent, proof of an overt act is not required. *See Whitfield v. United States*, 543 U.S. 209, 212-15 (2005) (proof of overt act not necessary for conspiracy to commit money laundering); *United States v. Shabani*, 513 U.S. 10, 15-16 (1994) (proof of overt act not necessary for conspiracy to violate drug statutes); *United States v. Gonzalez*, 906 F.3d 784, 792 (9th Cir. 2018) (noting

In an aiding and abetting case, not only must the underlying substantive offense actually be completed by someone, but the accused must take some action, a substantial step, toward associating herself with the criminal venture. *See United States v. Lopez,* 484 F.3d 1186, 1199 (9th Cir. 2007). By contrast, in a conspiracy case, the agreement need not be explicit and it is sufficient if the conspirators knew or had reason to know of the scope of the conspiracy and that their own benefits depended on the success of the venture. *Sullivan,* 522 F.3d at 976. Thus, the jury's acquittal on the more stringent aiding and abetting theory was not inconsistent with a guilty verdict on the broader conspiracy count.

Finally, even if the defendant could show the verdicts were inconsistent, that is no reason to set aside the conspiracy count. *See United States v. Horowitz*, 756 F.2d 1400, 1406 (9th Cir. 1985) ("Inconsistent jury verdicts do not mandate reversal for it has long been the rule that consistency between verdicts is not required."); *See also United States v. Powell*, 469 U.S. 57 (1984) (acquittal on charges of conspiring to possess cocaine and possession of cocaine did not require reversal of conviction for using telephones to facilitate those offenses on the ground of inconsistent verdicts). A defendant can be convicted upon one or some of the counts but acquitted on another or others and the conviction will be sustained even though

---

that proof of overt act is not necessary for conspiracy to violate civil rights).

rationally incompatible with the acquittal. *United States v. Miller*, 546 F.2d 320, 325 (9th Cir. 1976). Thus, reversal is not warranted based upon the grounds of inconsistent verdicts.

In addition, any error was not "plain", i.e., clear or obvious. Nor has the defendant shown that any alleged error had a "substantial and injurious effect" on the verdict. *Dominguez Benitez*, 542 U.S. at 81. Indeed, in light of the instructions and record as a whole, including the overwhelming evidence of the defendant's guilt, he has failed to meet his burden. Nor can he show a miscarriage of justice on this record. *Singh*, 979 F.3d at 728,

The district court's instructions, when taken as a whole and viewed in the context of the entire trial, were clear and legally accurate. Nor has the defendant shown that any error was plain, violated his substantial rights, and caused a miscarriage of justice. The district court did not err, much less plainly err.

**B.**    **The District Court Did Not Plainly Err or Abuse Its Discretion In Admitting Lay Opinion Testimony, Nor Did It Plainly Err By Failing to Provide A Dual Role Testimony Instruction Because Agent Gomez Provided No Expert Testimony.    Any Error Was Harmless and Not Plain.**

1.    Standard of Review

"The admissibility of lay opinion testimony under Rule 701 is committed to the sound discretion of the trial judge and his decision will be overturned only if it constitutes a clear abuse of discretion." *United States v. Gadson*, 763 F.3d 1189,

1209 (9th Cir. 2014). When a defendant fails to object below, a district court's admission of evidence is reviewed for plain error. *United States v. Wells*, 879 F.3d 900, 925 (9th Cir. 2018). When a defendant fails to request an instruction regarding how to evaluate dual role testimony, this Court reviews the lack of such an instruction for plain error. *United States v. Torralba-Mendia*, 784 F.3d 652, 658 (9th Cir. 2015).

During direct examination, HSI Special Agent Juan Gomez was asked whether the defendant's text messages appeared related to the rescue at the Home Depot. (4-ER-586-587.) The defendant's objection to "foundation" was overruled. (*Id.*) After unsuccessfully attempting to impeach Agent Gomez, the defendant moved to strike the testimony he elicited as misleading and prejudicial. (1-ER-027.) At no point did the defendant object to improper lay opinion. (1-ER-24-31.) And at no point did he request an instruction regarding how to evaluate dual role testimony. (5-ER-791-800.) Thus, this Court should review his arguments for plain error. *See United States v. Koziol*, 993 F.3d 1160, 1183, n. 21 (9th Cir. 2021) ("An evidentiary issue is not preserved unless the specific objection is raised at trial.").

## 2. District Court's Ruling

Agent Gomez is a native Spanish speaker and was a "co-case agent." (4-ER-558.) He testified that agents extracted the data from the defendants' phones and received reports detailing this information. (4-ER-559-560.) He created three charts

containing WhatsApp and other communications found on the defendant's phone, including messages between the defendant and co-defendant Julio Rodriguez-Rojas. (4-ER-561-564.)

The government asked Agent Gomez the following questions at trial without objection:

> Q: Okay. And in the response, did Mr. Lares respond to those text messages?
>
> A: Yes, he did.
>
> Q: And he stated that – did it appear he did not understand what he was talking about, what Mr. Rodriguez was talking about?
>
> A: No. He knew very well what he was talking about. He had the context of the conversations, so he's very familiar with it.

(4-ER-569.)

The government then asked whether the three charts containing the text messages appeared related to the "takedown event."[6] (4-ER-586-587.) The defendant objected to the question on grounds of foundation which was overruled. (4-ER-587.) Agent Gomez responded "Yes." (4-ER-587.)

Defense counsel attempted to discredit the agent's testimony on cross-examination:

---

[6] The defendant mistakenly claims the government asked Agent Gomez whether the charts containing the text messages were related to the "charged offense." (Op. Br. at 38.) Rather, the question was more general and simply asked whether the text messages appear related to the rescue at the Home Depot.

Q:    If the monies were already paid in the account prior to the takedown, then why would Ivan Borboa have met with undercovers to receive the 8,000 per person on April 8th . . . if it had already been paid.

A.    Well, what I meant by related, if I may clarify, is that in time, context, and amount they were related. But additionally there were other victims, so a deposit could have been made into those accounts. . . .

(4-ER-594-595.) Counsel asked further questions:

Q.    How is the 7,000 or 8,000 that they're talking about related to this case, as you stated?

A.    I'm saying they are related in time, context, and the amount of the money that was –

Q:    So you're making – you're speculating on that?

A:    I'm not – I'm saying that's what I'm – I'm saying its related based on the time, context, and the amount of money. That's all I'm saying.

(4-ER-597-598.)

At this point, the district court expressed concern that the wording of defense counsel's questions was causing confusion. (1-ER-12.) However, the defendant continued the question Agent Gomez:

Q:    In all the text messages between Olegario and Julio, they never discuss, quote, "hostages," correct?

A:    So I feel there is a discussion of stealing another load, a load of illegal aliens from another, another group. So essentially they're saying they're inviting themselves to an area that is common for smuggling, that is a popular corridor. They speak of an area called the antenna. So the antenna, based on my consultations

26

with agents in the Sells area, is a common term for a smuggling corridor there.  And so they're familiar that alien loads go through the antenna, and they discuss inviting themselves to there to collect aliens.

Q:     For the purposes of smuggling, correct?

A:     I would not say for the purpose of smuggling because they're already being smuggled.  So they're inviting themselves there to take over the alien loads and profit from that by collecting ransom from the families.

(4-ER-608-609.)

The district court then expressed concern that defense counsel's line of questioning was "expanding beyond what the government has introduced."  (1-ER-23-24.)  Defense counsel stated that he would move on, but moved to strike the testimony he had elicited from the agent about the meaning of "inviting ourselves" as misleading and prejudicial.  (1-ER-24, 27.)  The district court denied the motion to strike and noted that the testimony was given in response to questions that defense counsel had "asked several times in several ways." The court stated:

Well, just wait a minute.  But these are the questions you asked, and those were the responses that you were getting, and now you're saying they're inaccurate and therefore should be stricken, which is different than what you were saying earlier.  I mean, those were the answers that you elicited with your questions. . . . So I just can't strike them on grounds that you're saying now that they're inaccurate.

(1-ER-28-30.)

3. <u>Argument</u>

The defendant claims that the district court erred in allowing improper lay opinion testimony from Agent Gomez, an argument he did not raise below. (Op. Br. at 44-47.) He also claims for the first time that the district court plainly erred by failing to instruct the jury on how to evaluate dual role testimony. (Op Br. at 47.) The defendant fails to show any error at all, much less plain error. The agent's testimony was admissible lay opinion. And the defendant elicited most of the testimony at issue, so any error was invited. Finally, the district court did not plainly err by failing to give a jury instruction sua sponte on dual role expert/lay testimony because Agent Gomez did not testify as an expert. Any evidentiary or instructional error was not plain and harmless and the defendant failed to show that it violated his substantial rights and caused a miscarriage of justice.

> a. <u>Testimony That the Defendant's Text Messages Were Related To The Rescue At The Home Depot Was Proper Lay Opinion.</u>

On direct examination, Agent Gomez testified that the defendants' text messages between the defendants appeared related to the "takedown event." (4-ER-586-587.) This was admissible lay opinion.

Federal Rule of Evidence 701 "allows a lay witness to offer opinions that are (a) 'rationally based on the witness's perception,' (b) 'helpful' to the jury, and (c) 'not based on scientific, technical, or other specialized knowledge within the scope of' expert testimony." *Gadson*, 763 F.3d at 1206 (quoting Rule 701). Testimony

28

based on an agent's personal knowledge of the investigation is lay testimony, while testimony based on specialized knowledge is expert testimony. *United States v. Barragan*, 871 F.3d 689, 703-04 (9th Cir. 2017); *United States v. Freeman*, 498 F.3d 893, 901-02 (9th Cir. 2007) (distinguishing between testimony based on "specialized knowledge" and testimony based on "knowledge of the investigation"). "The line between lay and expert opinion depends on the basis of the opinion, not its subject matter." *Barragan*, 871 F.3d at 704.

Agent Gomez, as a co-case agent, was responsible for investigating the case, including examining the contents of the defendants' cell phones. His testimony was based on his knowledge of the text messages and his general knowledge of the investigation, including the events at the Home Depot. His testimony was rationally based on his own observations, was helpful to the jury, and was not based on scientific, technical, or specialized knowledge. Thus, it was a permissible lay opinion under Rule 701 and the district court did not abuse its discretion when it allowed this testimony. *Gadson*, 763 F.3d at 1206 (an agent may "offer interpretation of ambiguous conversations based upon his direct knowledge of the investigation.") (internal quotations omitted).

### b. Testimony Interpreting The Phrase "We're Inviting Ourselves" Was Proper Lay Opinion.

The defendant also contends that Agent Gomez's testimony interpreting the phrase "We're inviting ourselves" which he elicited from the witness, is improper

29

lay opinion.  (Op. Br. at 45-46.)  The defendant did not object on this ground below and there was no error, much less plain error.  Rather, the agent's opinion was based on personal knowledge of the text messages and his general knowledge of the investigation and was thus permissible lay opinion testimony.  *Id*.  There was no error at all.

The defendant argues there was insufficient foundation for Agent Gomez's testimony because he did not describe his involvement in the investigation.  (Op. Br. at 44-45.)  He did make a foundation objection below regarding whether the texts appeared related to a "takedown event" (4-ER-587), not lack of foundation for the entire testimony.  Thus, this is another unpreserved argument.  In any event, the defendant is incorrect.  As a case agent, the agent testified that he was familiar with the facts of the case and was responsible for directing the investigation.  (4-ER-592-593.)  And he stated that he was familiar with the phones that were seized during the investigation and the information that was extracted from them.  (4-ER-559-560.)  Thus, there was a sufficient foundation for his testimony about the communications on the phones.  *See United States v. Holguin*, 51 F.4th 841, 865 (9th Cir. 2022) ("We have allowed officers to interpret communications based on the investigation as a whole and have not required all information supporting lay opinion to be placed before the jury.").

Moreover, any error here was invited by the defendant. In *United States v. Reyes-Alvarado*, 963 F.2d 1184 (9th Cir. 1992), this Court held that the defendant had invited the error where own attorney elicited a statement on cross-examination that he later argued should have been excluded. *Id.* at 1186–87. This Court reached the same conclusion in *Johnson v. I.N.S.*, 971 F.2d 340 (9th Cir. 1992), where the defense counsel had offered into evidence the document he then sought to challenge on appeal as inadmissible hearsay. *See id.* at 343–44. Here, similarly, Agent Gomez's testimony to which the defendant objects, was elicited by defense counsel in an attempt to show that the text messages did not reference hostage taking. As the district court correctly noted, however, this testimony was in response to questions the defendant "asked several times in several ways." (1-ER-28-30.) Any error was invited by the defendant and not grounds for reversal.

The defendant also argues that Agent Gomez's lay opinions about the text messages was improper under Rule 701(a) because the agent was not a participant, and his opinions were not "rationally based on his perception." (Op. Br. at 46.) As the defendant acknowledges, however, this Court held otherwise in *Gadson* and his argument is foreclosed by this Court's precedent.

The defendant also argues for the first time that the testimony should have been excluded under Rule 403 because any probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury. (Op. Br. at

46-47.) This objection was not raised below and is reviewed for plain error. In any event, whatever standard of review is employed, Agent Gomez's testimony was relevant to whether the defendant had knowledge of, or was involved in, the hostage taking conspiracy. *United States v. Schaff*, 948 F.2d 501, 505 (9th Cir. 1991) ("Evidence is relevant if it has any tendency to make the existence of any material fact more probable or less probable."). Thus, it was probative at the outset.

Nor was the probative value is substantially outweighed by the danger of unfair prejudice under Rule 403. *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995). "Rule 403 . . . is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *Id.* (internal quotation marks omitted). "Under the terms of the rule, the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id.*; *see also United States v. Haischer*, 780 F.3d 1277, 1281-82 (9th Cir. 2015) ("Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." (internal quotation marks omitted)). Any danger of prejudice here did not substantially outweigh by the probative value of this evidence of the defendant's knowledge of the hostage taking. The admission of this testimony was not error, plain or otherwise.

c. Testimony Explaining the Word "Antenna" Was Not Expert Testimony and a Dual Role Testimony Instruction Was Not Required.

Agent Gomez testified during cross-examination that "the antenna, based upon my consultations with agents in the Sells area, is a common term for a smuggling corridor there." (1-ER-21.) The defendant claims for the first time that this was expert testimony that required the district court to provide an instruction on dual role expert/lay testimony. (Op. Br. at 44, 47.) He is mistaken. Agent Gomez did not testify as an expert and the district court did not plainly err by not giving a jury instruction *sua sponte* on dual role testimony. Moreover, again, the defendant elicited this response.

Agent Gomez's statement about the antenna was not an expert opinion. The statement was based on what other agents had told him. (1-ER-21.) This testimony required no specialized knowledge, skill or expertise and thus fell outside the scope of Rule 702. *Barragan*, 871 F.3d at 704 ("The line between lay and expert opinion depends on the basis of the opinion, not its subject matter.").

Agent Gomez was not qualified or presented as an expert witness and did not testify as an expert. (4-ER-556-624.) In *United States v. Vera*, 770 F.3d 1232, 1235 (9th Cir. 2014), this Court held that when a law enforcement officer provides both expert testimony and lay opinions based on his investigation of the defendant's wrongful conduct, the jury must be instructed on how to evaluate each form of

33

testimony. However, because Agent Gomez did not testify as an expert witness, this doctrine does not apply. There was no plain error when the district court's did not *sua sponte* instruct the jury how to evaluate dual role testimony of a percipient witness who also testified as an expert, because Agent Gomez did not testify as an expert. *See United States v. Gonzalez*, 658 Fed. Appx. 867, 871 (9th Cir. 2016). And any error in admitting the testimony was invited by the defendant, who elicited it.

d.   <u>Any Evidentiary Error Was Harmless And Not Plain.</u>

If any of the agent's statement were error (which they were not) or not otherwise invited by the defendant, any error, like any alleged instructional error, was harmless and not plain. Agent Gomez's testimony was a small part of a five-day trial that included eleven government witnesses. The overwhelming majority of his testimony was unchallenged percipient testimony about the defendant's cell phone communications that was corroborated by a plethora of other evidence. Moreover, there was overwhelming independent evidence of the defendant's guilt:

- The defendant transported the victims from the stash house to the Home Depot while armed and wearing a boonie hat and mask. (3-ER-254-256; 3-ER-425.)

- The defendant was in possession of the victims' phones, which had been taken from them when they were kidnapped in the desert. (4-ER-728.)

34

- The defendant released the victims only after receiving a phone call confirming that the ransom money had been paid.  (4-ER-728.)

- After agents tried to stop the defendant's vehicle, he fled the scene of the rescue, abandoned his vehicle while it was moving, and tried to escape on foot.  (3-ER-415-425.)

- The defendant collected bank account information to receive ransom money.

As discussed above, because the defendant did not preserve his objections to Agent Gomez's testimony, he can only prevail on a showing of plain error.  He has failed to show any error was plain.  *See United States v. Olano*, 507 U.S. 725, 734 ("'Plain' is synonymous with 'clear' or 'obvious.'"); *see also Holguin*, 51 F.4th at 866 (When officer provided "some" testimony about his investigative activities, any disconnect between his general foundational testimony and his specific opinions was not sufficient to warrant sua sponte intervention.).  Nor has he shown that any plain error affected his substantial rights, and indeed, as mentioned earlier, he cannot do so in light of the overwhelming evidence of his guilt.  Nor has he shown that any purported error seriously affected the fairness, integrity or public reputation of the trial court proceedings here.  *Olano*, 507 U.S. at 737.

**C.** **The Defendant Acknowledges That He Cannot Show Plain Error Regarding The Constitutionality of 18 U.S.C. § 922(g)(1).**

1.     Standard of Review

Constitutional challenges not raised below are reviewed for plain error. *United States v. Chi Mak*, 683 F.3d 1126, 1133 (9th Cir. 2012).

2.     Argument

The defendant argues for the first time on appeal that 18 U.S.C. § 922(g)(1) is facially unconstitutional and unconstitutional as applied to him under *New York State Rifle and Pistol Association v. Bruen*, 527 U.S. 1 (2022). (Op Br. at 49-52.) He concedes he cannot meet his burden on plain error review.[7] In any event, the statute does not violate the Second Amendment and the district court did not err, much less plainly err, in failing to find, sua sponte, that the statute is unconstitutional.

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court held that § 922(g)(1) is facially constitutional and explained that "longstanding prohibitions on the possession of firearms by felons" are "presumptively lawful." *Id.* at 626–27 & n.26; *see United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) (finding that the foregoing language is an "integral" part of *Heller*'s holding and is therefore not dicta). In *Bruen*, the Court made clear that its new test

---

[7] The defendant acknowledges that he cannot meet his burden on plain error review and is raising the issue to preserve it should this Court or the Supreme Court issue an opinion that could allow him to meet his burden while this appeal is pending. (Op. Br. at 52.)

was "[i]n keeping with *Heller*," and six justices agreed in separate writings
that *Heller*'s statements about longstanding gun prohibitions remain valid. 597 U.S.
at 17 (2022) (majority opinion); *id.* at 72 (Alito, J., concurring); *id.* at 80–
81 (Kavanaugh, J., joined by Roberts, C.J., concurring); *id.* at 129 (Breyer, J., joined
by Sotomayor and Kagan, JJ., dissenting). And in *United States v. Rahimi*, 144 S.Ct.
1889 (2024), the Court reiterated that prohibitions "like those on the possession of
firearms by 'felons and the mentally ill' are 'presumptively lawful.'" 144 S. Ct. at
1902 (quoting *Heller*, 554 U.S. at 626–27 & n.26). As this Court recently observed,
"[b]ecause such a prohibition remains presumptively constitutional, §
922(g)(1) cannot be said to be facially unconstitutional." *United States v. Whitney*,
No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024).

In addition, "[s]ince the founding, our Nation's firearm laws have included
provisions preventing individuals who threaten physical harm to others from
misusing firearms." *Rahimi*, 144 S. Ct. at 1896; *see United States v. Perez-Garcia*,
96 F.4th 1166, 1191 (9th Cir. 2024) ("[T]he historical evidence, when considered as
a whole, shows a long and broad history of legislatures exercising authority to disarm
people whose possession of firearms would pose an unusual danger, beyond the
ordinary citizen, to themselves or others."). "Take people who have been convicted
of a drive-by-shooting, carjacking, armed bank robbery, or even assassinating the
President of the United States"; it is beyond dispute that such people pose a grave

threat to public safety and that "the government may constitutionally forbid [them] from continuing to possess firearms. That ends this facial challenge." *United States v. Canada*, 103 F.4th 257, 258–59 (4th Cir. 2024) (rejecting a facial challenge to § 922(g)). Thus, the defendant's facial challenge to § 922(g)(1) is foreclosed by precedent and without merit.

The defendant also argues that § 922(g)(1) is unconstitutional as applied to those who, like him, have been convicted of only nonviolent felonies. (Op. Br. at 52.) The defendant's argument is foreclosed by this Court's precedent. This Court has made clear that § 922(g)(1) can be constitutionally applied to *any* felon, and that there is no constitutional distinction between violent and nonviolent felons. *United States v. Phillips*, 827 F.3d 1171, 1173–74 (9th Cir. 2016). The defendant has been convicted of several felonies. (PSR ¶¶ 55-57.) Therefore, § 922(g)(1) can be constitutionally applied to him.

After the defendant filed his brief, a panel of this Court found that *Bruen* had abrogated circuit precedent (like *Vongxay*) upholding § 922(g)(1) under the Second Amendment and held that § 922(g)(1) was unconstitutional as applied to a nonviolent felon. *United States v. Duarte*, 101 F.4th 657, 661–62 (9th Cir. 2024). This Court subsequently voted to rehear *Duarte* en banc, and vacated the panel decision. *United States v. Duarte*, No. 22-50048, 2024 WL 3443151, at *1 (9th Cir. July 17, 2024). "[A] decision that has been vacated has no precedential authority

whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009). Thus, under this Court's current precedent, the defendant's argument is both foreclosed and meritless.

**D.   The District Court Properly Considered Acquitted Conduct At Sentencing, And The Defendant's Contrary Argument Is Foreclosed, As He Acknowledges On Appeal.**

1.   Standard of Review

This Court reviews claims that a sentence is unconstitutional de novo. *United States v. Leon H.*, 365 F.3d 750, 752 (9th Cir. 2004).

2.   District Court's Ruling

The probation department grouped Counts 1, 4, 5, 6, and 7 for guideline calculation purposes under U.S.S.G. § 3D1.2(c) in Group 1. (PSR ¶ 31.) The probation department also grouped a pseudo count by itself in Group 2 because, under U.S.S.G. § 1B1.2(d), a conviction on a conspiracy count to commit more than one offense will be treated as if the defendant has been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit. (PSR ¶ 33.) Group 2 accounted for the second victim in the conspiracy. (*Id*.)

The probation department applied a base offense level of 32 for both groups and a 6-level enhancement under § 2A4.1(b)(1) because a ransom demand was made for the release of both hostages. (PSR ¶¶ 34, 35, 41, 42.) After assessing a 2-level multiple count adjustment enhancement under § 3D1.4, the probation department

39

calculated a total offense level of 40 and a criminal history category of IV. (PSR ¶ 49, 53, 59.) The advisory guideline range was 360 months to life. (PSR at p. 19.) The probation department recommended a sentence of 360 months. (*Id*.)

The defendant objected to the probation department's application of the two-level enhancement under § 3D1.4 and the six-level enhancement under § 2A4.1(b)(1). He argued that the enhancements were improperly based on acquitted conduct. (5-ER-912-914.)

At the sentencing hearing, the district court overruled the defendant's objections. (1-ER-34.) It found that the total adjusted offense level was 40 and the applicable guideline range was 360 months to life. (1-ER-35.) It varied downward and imposed a sentence of 216 months on Count 1 (1-ER-54) and 120-month concurrent sentences on Counts 4, 5, 6, and 7. (1-ER-54.)

3.    Argument

The defendant renews his argument that the district court violated his Sixth Amendment right to trial by jury by using acquitted conduct to increase his sentence. (Op. Br. at 53.) However, as the defendant acknowledges, his argument is foreclosed by Supreme Court and Ninth Circuit precedent. (Op. Br. at 53-54) (citing *United States v. Mercado*, 474 F.3d 654, 656 (9th Cir. 2007) (citing *United States v. Watts*, 519 U.S. 148 (1997)). Thus, the district court did not err in considering any acquitted

40

conduct when it applied the enhancements under § 3D1.4 and § 2A4.1(b)(1). This Court should affirm.

# VIII.  **CONCLUSION**

For the foregoing reasons, the judgment of conviction and sentence should be affirmed.

GARY M. RESTAINO
United States Attorney
District of Arizona

CHRISTINA M. CABANILLAS
Deputy Appellate Chief

*s/ Craig H. Russell*

CRAIG H. RUSSELL
Assistant U.S. Attorney

## IX.  <u>STATEMENT OF RELATED CASES</u>

To the knowledge of counsel, there are no related cases currently pending in this Court.

## X.   <u>CERTIFICATE OF COMPLIANCE FOR BRIEFS (Form 8)</u>

**9th Cir. Case Number(s):   23-1096**

I am the attorney or self-represented party.

**This brief contains <u>9273</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ x ] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  [  ] it is a joint brief submitted by separately represented parties;
  [  ] a party or parties are filing a single brief in response to multiple briefs; or
  [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

*October 4, 2024*                                   *s/Craig H. Russell*_____
Date                                                         CRAIG H. RUSSEL
                                                               Assistant U.S. Attorney

(CMC/ba)

44