No. 23-1096

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

vs.

**OLEGARIO LARES-DE LA ROSA,**

Defendant-Appellant.

---

On Appeal from the Judgment of the
United States District Court for the District of Arizona
D.Ct. No. 4:22-cr-00974-JGZ-JR

---

**REPLY BRIEF OF APPELLANT**

---

<div style="margin-left:40%">

JON M. SANDS
Federal Public Defender
District of Arizona

M. EDITH CUNNINGHAM
Assistant Federal Public Defender
407 W. Congress, Suite 501
Tucson, AZ  85701
Telephone: (520) 879-7500
Facsimile: (520) 879-7600
edie_cunningham@fd.org
*Attorneys for Mr. Lares-De La Rosa*

</div>

# TABLE OF CONTENTS

Page

ARGUMENT ...................................................................................................1

I.  Lares's conviction for conspiracy to hostage take should be reversed
    because the district court's jury instruction on this offense was misleading
    and inadequate to guide the jury's deliberations ...........................................1

I. A.  The jury instruction was plainly erroneous .........................................1

I. B.  The erroneous jury instruction impacted Lares's substantial rights
       and undermined the integrity of the proceedings ...............................6

II.  The district court's erroneous rulings on Agent Gomez's lay opinion
     testimony and its failure to give a multiple-role instruction to guide the
     jury's consideration of that testimony require reversal of the conspiracy-to-
     hostage-take conviction. ..........................................................................9

II. A.  Most of the alleged errors were preserved for appellate review, and
        none were invited. ..........................................................................9

II. B. Agent Gomez's lay opinions were improper .....................................12

      II. B. 1. The challenged lay opinions lacked sufficient foundation
               and did not assist the jury.......................................................12

      II. B. 2. Admission of the lay opinions violated Federal Rule of
               Evidence 403.........................................................................18

      II. B. 3. The district court plainly erred in failing to provide an
               instruction on Agent's Gomez's multifaceted testimony. ........20

II.C. The errors prejudiced Lares...............................................................22

III.  Lares's conviction for prohibited possession by a felon must be vacated
      because the statute is unconstitutional, both facially and as applied to him .24

i

IV.    Remand for resentencing is required because the district court imposed sentencing enhancements based on acquitted conduct...................................26

CONCLUSION.........................................................................................26

STATEMENT OF RELATED CASES ....................................................27

CERTIFICATE OF COMPLIANCE.......................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Diaz v. United States*,
  602 U.S. 526 (2024)............................................................18

*Johnson v. INS*,
  971 F.2d 340 (9th Cir. 1992) ............................................11

*United States v. Alvarez*,
  837 F.2d 1024, 1030 (11th Cir. 1988) ..............................19

*United States v. Barrett*,
  703 F.2d 1076 (9th Cir. 1983) ..........................................18

*United States v. Bear*,
  439 F.3d 565 (9th Cir. 2006) ..........................................6, 8

*United States v. Caro*,
  569 F.2d 411 (5th Cir. 1978) ..............................................8

*United States v. DeLuca*,
  692 F.2d 1277 (9th Cir. 1982) ............................................2

*United States v. Dorsey*,
  No. 19-50182, 2024 WL 4966060 (9th Cir. Dec. 4, 2024) ..................16, 17, 18

*United States v. Duarte*,
  101 F.4th 657 (9th Cir. 2024) ..........................................25

*United States v. Duarte*,
  No. 22-50048, 2024 WL 3443151 (9th Cir. July 17, 2024) ..............................25

*United States v. Gadson*,
  763 F.3d 1189 (9th Cir. 2014) ..........................14, 15, 17, 18

*United States v. Grinage*,
  390 F.3d at 748-49, 750-51..............................................17

*United States v. Haischer*,
  780 F.3d 1277 (9th Cir. 2015) ......................................19, 20

*United States v. Hampton*,
    718 F.3d 978 (D.C. Cir. 2013)....................................................16, 17, 19

*United States v. Harris*,
    679 F.3d 1179 (9th Cir. 2012) ...............................................................10

*United States v. Holguin*,
    51 F.4th 841 (9th Cir. 2022) ............................................................16, 22

*United States v. Horsley*,
    105 F.4th 193 (4th Cir. 2024) ................................................................17

*United States v. Joseph*,
    716 F.3d 1273 (9th Cir. 2013) .................................................................8

*United States v. Kevin Freeman*,
    498 F.3d 893 (9th Cir. 2007) ...........................................................15, 20

*United States v. Lipscomb*,
    14 F.3d 1236 (7th Cir. 1994) ..................................................................19

*United States v. Manarite*,
    44 F.3d 1407 (9th Cir. 1995) ...................................................................8

*United States v. Marcus Freeman*,
    730 F.3d 590, 597 (6th Cir. 2013) ..........................................................17

*United States v. McCaleb*,
    552 F.3d 1053 (9th Cir. 2009) .................................................................2

*United States v. Milheiser*,
    98 F.4th 935 (9th Cir. 2024) ...................................................................7

*United States v. Peoples*,
    250 F.3d 630, 639-40 (8th Cir. 2001).................................................17, 18

*United States v. Rahimi*,
    602 U.S. 680 (2024)...........................................................................24, 25

*United States v. Reyes-Alvarado*,
    963 F.2d 1184 (9th Cir. 1992) ................................................................11

iv

*United States v. Rodriguez,*
    971 F.3d 1005 (9th Cir. 2020) ............................................................22

*United States v. Velarde-Gomez,*
    269 F.3d 1023 (9th Cir. 2001) ...............................................................7

*United States v. Vera,*
    770 F.3d 1232 (9th Cir. 2014) .............................................................19

*United States v. Vernon,*
    723 F.3d 1234 (11th Cir. 2013) ..............................................................2

*United States v. Waters,*
    627 F.3d 345 (9th Cir. 2010) .................................................................7

## Constitutions

Second Amendment .....................................................................................25

## Statutes

18 U.S.C. § 371 ............................................................................................2

18 U.S.C. § 922(g)(1) ............................................................................24, 25

18 U.S.C. § 922(g)(8) ............................................................................24, 25

18 U.S.C. § 1203(a) .................................................................................. 2-3

## Court Rules

Fed. R. Evid. 403 ........................................................................... 10, 18, 20

Fed. R. Evid. 701 ..........................................................................9, 18, 15, 16

Fed. R. Evid. 702 ....................................................................................9, 20

## Other

Ninth Circuit Model Criminal Jury Instruction 11.1 (2024)......................................3

Ninth Circuit Model Criminal Jury Instruction 3.15 (March 2023).......................21

# ARGUMENT

**I.  Lares's conviction for conspiracy to hostage take should be reversed because the district court's jury instruction on this offense was misleading and inadequate to guide the jury's deliberations.**

Lares's opening brief demonstrates that, given the circumstances, the conspiracy-to-hostage-take instruction was plainly erroneous because it was confusing and inadequate to guide the jury's deliberations on the essential element of knowledge. The government fails to refute that the instruction improperly allowed the jury to convict even if it did not find beyond a reasonable doubt that Lares knew he was joining a conspiracy to hostage take.

## I. A.  The jury instruction was plainly erroneous.

The government avers that any error in the jury instruction was not plain. But the government does not dispute that, to be convicted of a conspiracy offense, it must prove that the defendant *knew* the unlawful object of the conspiracy that he joined. *See* Opening Brief (OB) at 31 (citing cases). Thus, the law is clear that, to be guilty of a conspiracy to hostage take, one must have known that *hostage taking* was the object of the conspiracy one joined. It is also clear that the court is obligated to clearly and accurately instruct the jury on each and every element of the charged crime in a manner adequate to unambiguously guide the jury's deliberations. *See* OB at 29-30.  Given the circumstances of this case (i.e., the charge of conspiracy to transport aliens for profit in count 4 and the related jury

1

instruction), the jury instruction on conspiracy to hostage take simply did not require the jury to find that Lares knew that the object of the conspiracy he joined was *hostage taking*. That was plain error.

The government leans heavily on the district court's use of the Ninth Circuit model jury instruction. But model instructions sometimes must be tailored to specific case circumstances. That is particularly true of the model instruction on conspiracy, because federal conspiracy statutes operate differently. For example, as the government notes, some require an overt act and others do not. And some, like the general conspiracy statute, 18 U.S.C. § 371, can be violated by conspiring to commit various criminal offense and thus may have multiple object crimes. *See United States v. DeLuca,* 692 F.2d 1277, 1281 (9th Cir. 1982) (noting that conspiracy count cited three alleged objects: two involving extortion and one involving arson). When a conspiracy is alleged to have multiple objects, the district court must instruct the jury on the elements of those crimes, *United States v. McCaleb*, 552 F.3d 1053, 1058 (9th Cir. 2009), and the jury must unanimously agree on a specific object offense. *United States v. Vernon*, 723 F.3d 1234, 1263 (11th Cir. 2013).

Lares was charged with conspiracy to hostage take under 18 U.S.C. § 1203(a), an offense with only one possible object offense: hostage taking. The Ninth Circuit's model conspiracy instruction, however, must account for situations

when a conspiracy is alleged to have multiple object offenses. That is why the model instructs the jury that it must find that "the defendant became a member of the conspiracy *knowing of at least one of its objects* and intending to help accomplish it" and that "there was a *plan to commit at least one of the crimes alleged in the indictment* as an object of the conspiracy with all of you agreeing as to the particular crime which the conspirators agreed to commit." Ninth Circuit Model Criminal Jury Instruction 11.1 (2024) (emphasis added). That language, however, was confusing in the context of this case, because the indictment also charged the offense of conspiracy to transport aliens for profit and the substantive object offenses of hostage taking and transportation of aliens for profit.

As explained in the opening brief, as written, the instructions plainly allowed the jury to convict Lares of conspiracy to hostage take if it found that Rodriguez and Borboa agreed to commit the crime of hostage taking, that one of the objects of Rodriguez's and Borboa's conspiracy was to profit from the transportation of undocumented migrants, and that Lares joined the conspiracy merely knowing of and conspiring to commit the transportation-for-profit object of the conspiracy. To avoid confusion, the district court should have instead instructed the jury that it had to find that Lares became a member of the conspiracy *knowing that its object was to commit the offense of hostage taking*, and that there was a plan to *commit hostage taking* with all agreeing as to the particular crime of hostage taking which

3

the conspirators agreed to commit. (The indictment alleged a separate hostage-taking offense for each victim.). Therefore, the government's assertion that "the instruction required the jury to find that the defendant joined not just any conspiracy – but a hostage taking conspiracy" (Appellee's Brief (AB) at 18) is simply incorrect. The instruction instead required the jury to find only that Lares joined a conspiracy to commit one of the crimes alleged in the indictment, and transportation of aliens for profit was one of those crimes.

Contrary to the government's contention, its closing argument did not mitigate the possibility of confusion but rather exacerbated it. The prosecutor repeatedly told the jury that, to convict Lares of conspiracy to hostage take, it needed to find that he joined the conspiracy knowing "at least one of the objects."[1] The prosecutor did *not* say that he had to know that the object of the conspiracy was *to hostage take.* Instead, the government told the jury that "the only object" for the conspiracy was to obtain $16,000.[2] But that was not correct. The $16,000 ($8,000 for Portillo and $8,000 for Perez) could have been related to either alien smuggling or hostage taking. As the government acknowledges (AB at 12-13), its expert, Agent Claudio, told the jury that, even in ordinary alien-smuggling operations that do not involve hostage taking, migrants typically pay an average

---

[1] 5-ER-834, 836, 868.
[2] 5-ER-868.

4

smuggling fee of $8,000 to $15,000 per person – often a portion at a midway point near the border such as in Arizona and the rest at the final destination – and they usually ask a friend or a relative to put money in a bank account provided by the alien-smuggling operation so as not to risk losing the cash during the course of their journey. *See* OB at 18-20, 34 (citing record). So, the government's closing argument encouraged jurors to convict of conspiracy to hostage take even if they believed that Lares only had the knowledge and intention to make money through alien smuggling that did not involve hostage taking.

Moreover, the theme of the government's closing argument was that Lares not only conspired to hostage take but actively participated in the endeavor because, *inter alia*, he was armed and did not release Portillo and Perez from the black Hyundai until he got the call confirming that the ransom had been paid.[3] If the jury had been convinced by that argument, it likely would have convicted Lares of hostage taking under an aiding and abetting theory, but he was acquitted on those charges.

---

[3] 4-ER-855.

### I. B.  The erroneous jury instruction impacted Lares's substantial rights and undermined the integrity of the proceedings.

As explained above, the confusing and inadequate conspiracy-to-hostage take instruction created a "genuine possibility that the jury convicted on a legally inadequate ground." *United States v. Bear*, 439 F.3d 565, 570 (9th Cir. 2006). Thus, Lares has demonstrated that the district court's plain error affected his substantial rights and undermined the fairness and integrity of the legal proceedings. *See id*.

The government misapprehends Lares's argument regarding the significance of his acquittal on the two hostage-taking counts to the prejudice analysis. *See* AB at 20-23. Lares does not contend that the inconsistency of the hostage-taking and the conspiracy-to-hostage-take verdicts itself *requires* reversal or *per se* demonstrates that the jury was confused by the conspiracy instruction. It is, rather, a compelling piece of the puzzle. Given the facts and arguments, it is likely that the jury would have convicted Lares on the substantive hostage-taking counts if it had believed beyond a reasonable doubt that he knew the object of the conspiracy he joined was *hostage taking.* Indeed, the government argued that he was "actively participating" in the hostage taking because he did not give Portillo and Perez their cell phones or allow them to leave the black Hyundai until he had gotten word that

6

the $16,000 had been paid.[4] The prosecutor also argued that he intended to facilitate the hostage taking by obtaining bank accounts for the payments.[5] If the government proved these points, then Lares would be guilty of substantive hostage taking under the aiding and abetting theory, because he would be aiding with at least one element of hostage taking: detaining or threatening to continue to detain Portillo and Perez and facilitating the payment of ransom for their release. *See* 2-ER-108-111. Yet the jury acquitted him on the substantive hostage taking offenses.

This Court considers the entire record in evaluating whether an error prejudiced the defendant. *See United States v. Milheiser*, 98 F.4th 935, 946 (9th Cir. 2024) (noting that determining whether an error is prejudicial requires consideration of the entire record). *See also*, *e.g.*, *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001) (length of jury deliberations relevant to prejudice analysis). For example, the court considers whether closing arguments contributed to the harm from the error. *See United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010) (finding prejudice where government emphasized improper evidence in closing argument). As previously explained, the government's closing argument heightened the possibility of jury confusion because the prosecutor did not make clear that Lares had to know that the object of the conspiracy was

---

[4] 4-ER-855.
[5] 4-ER-840, 845-50.

7

*hostage taking*, rather than merely making $16,000 from alien smuggling. And, in considering an alleged error in jury instructions related to a conspiracy charge, this Court noted that if the jury acquitted on the substantive object crimes, the jury "likely did not base the conspiracy convictions" on those crimes, although it is impossible to know for sure. *United States v. Manarite*, 44 F.3d 1407, 1414 (9th Cir. 1995), *as amended on denial of reh'g* (Mar. 15, 1995). *Cf. United States v. Caro*, 569 F.2d 411, 418 (5th Cir. 1978) (noting, in reviewing the sufficiency of evidence for a conspiracy conviction, that while "there is nothing necessarily inconsistent, in law or logic, [with a ] . . . a conviction for conspiracy and acquittal of the substantive offense . . . . such a result should engage our judicial skepticism" about the evidentiary foundation of the conspiracy conviction).

Because Lares did not object in the district court, he has the burden of establishing that the inadequate and confusing jury instruction affected his substantial rights. But, to do so, he need only show the reasonable probability of a different outcome, which is simply a genuine possibility—not even a likelihood. *United States v. Joseph*, 716 F.3d 1273, 1280 (9th Cir. 2013); *Bear*, 439 F.3d at 570. He has more than met his burden. This Court should therefore vacate his conviction for conspiracy to hostage take.

8

**II.     The district court's erroneous rulings on Agent Gomez's lay opinion testimony and its failure to give a multiple-role instruction to guide the jury's consideration of that testimony require reversal of the conspiracy-to-hostage-take conviction.**

The government fails to refute Lares's argument that Agent Gomez provided

improper, prejudicial lay opinions regarding messages on Lares's phone and that

the district court erred in failing to instruct on the multifaceted nature of Agent

Gomez's testimony.

### II. A. Most of the alleged errors were preserved for appellate review, and none were invited.

The government contends that all issues should either be reviewed for plain

error or deemed waived as invited error. But the government concedes that defense

counsel lodged a foundation objection when the prosecutor asked Agent Gomez if

Lares's text messages appeared to be related to the rescue at Home Depot. *See* AB

at 24. A witness provides an improper opinion if he does not have an appropriate

basis to render the opinion either as an expert or a lay witness, i.e., if he lacks

appropriate foundation for the opinion. *See* Fed. R. Evid. 701 (noting that lay

opinion testimony must be rationally based on the witness's perception); Fed. R.

Evid. 702 (noting that expert opinion testimony must be based on sufficient facts

or data and the product of reliable principles and methods). A party is not required

"to frame his objection in the express terms" of a rule to preserve an issue for

appellate review. *United States v. Harris*, 679 F.3d 1179, 1182 n.1 (9th Cir. 2012). Defense counsel adequately conveyed the basis of the objection.

Lares likewise preserved an objection for improper opinion when he moved to strike Agent Gomez's non-responsive answer about whether Lares and Rodriguez ever discussed "hostages."[6] He objected that the agent "took it upon himself to define" . . . . "inviting ourselves" as "hostage-taking."[7] Defense counsel therefore conveyed that the testimony was an unfounded and improper opinion, which was sufficient to preserve the issue for appeal. *See Harris*, 679 F.3d at 1182 n.1. The government acknowledges that Lares also moved to strike the testimony as misleading and prejudicial. *See* AB at 24. These grounds conveyed Lares's objection based of Federal Rule of Evidence 403, which he also raises in this appeal.

And, contrary to the government's contention, defense counsel did not invite the error related to Agent Gomez's interpretation of "we're inviting ourselves." Counsel asked the agent whether the messages between Lares and Rodriguez discussed "quote 'hostages.'"[8] Because the messages did not use that term, there was only one correct answer to that question: *no*. But Agent Gomez provided a

---

[6] *See* 1-ER-21-22, 4-ER-608-09.
[7] 1-ER-27-28, 4-ER-614-15. (On 1-ER-28, 4-ER-615, counsel elaborates on the objection he made on 1-ER-27, 4-ER-614.)
[8] 1-ER-21, 4-ER-608

10

rambling, non-responsive answer in which he expressed his "feeling" that they were discussing "stealing" a load of aliens from another group when Rodriguez said "we're inviting ourselves," [9] and said they were "inviting themselves there to collect aliens."[10] Defense counsel merely sought to rein in the agent's nonresponsive answer when he asked, "For the purposes of smuggling, correct?".[11] But the agent-doubled down and reiterated his improper opinion that Rodriguez meant that they were inviting themselves to take over the alien loads to profit from collecting ransom.[12] Defense counsel then appropriately moved to strike Agent Gomez's non-responsive and improper opinions.[13]

*United States v. Reyes-Alvarado*, 963 F.2d 1184 (9th Cir. 1992), upon which the government relies, is inapposite. There, defense counsel asked the officer an open-ended question about what an individual had said to the officer; the officer did not spontaneously provide a non-responsive and improper opinion, as Agent Gomez did. *Id.* at 1187. *Johnson v. INS*, 971 F.2d 340, 343-44 (9th Cir. 1992) is also inapposite because Lares did not offer to admit a document into evidence and then challenge its admission on appeal.

---

[9] 1-ER-21-22, 4-ER-608-09; 5-ER-893 (line 145).
[10] 1-ER-22, 4-ER-609.
[11] 1-ER-22, 4-ER-609.
[12] 1-ER-22, 4-ER-609.
[13] 1-ER-025-28, 4-ER-612-15.

11

Lares acknowledges that he did not object to the district court's failure to instruct the jury about the multifaceted nature of Agent Gomez's testimony. He also did not object to Agent Gomez's testimony that Lares "knew very well" what Rodriguez was talking about in the messages.[14] He therefore agrees those aspects of his argument are properly reviewed for plain error.

## II.B. Agent Gomez's lay opinions were improper.

### II.B.1. The challenged lay opinions lacked sufficient foundation and did not assist the jury.

The government does not dispute that Agent Gomez became involved in the investigation *after* the arrests arising from the Home Depot takedown event. AB at 24-25. And, as the government acknowledges, Agent Gomez's role in the investigation was limited, even though he was deemed a "co-case agent."[15] He received reports created by other agents regarding the raw data extracted from the defendants' phones, reports which simply produced that raw data "in a format that [could] be easily read by people unfamiliar with technical aspects of it," such as himself.[16] Agent Gomez then created three charts showing WhatsApp and other communications on the defendants' phones, including those between Lares and

---

[14] 4-ER-569.
[15] 4-ER-592-93.
[16] 4-ER-559.

12

Rodriguez.[17] These three charts were admitted at trial as exhibits 41-43.**[18]** Even though Agent Gomez speaks Spanish, a certified court interpreter translated the messages into the English version used on the charts.[19]

Agent Gomez also reviewed call information from the phones of Rodriguez and Borboa (the 602 number),[20] which was also admitted into evidence as exhibits 40 and 45,[21] and he looked at the contact information in the phones of Portillo and Perez.[22] That contact information was also admitted as exhibits 58 and 59.[23] Agent Gomez tried to develop some leads by calling phone numbers that Borboa's phone (the 602 number) had called but could not identify any additional witnesses or pertinent information.[24]

---

[17] 4-ER-562.
[18]("FER" refers to Appellant's Further Excerpts.) *See* FER-005 (exhibit list), 2-ER-201 (exhibits admitted by stipulation); 5-ER-890-905 (Exhibt 41); FER-013-18 (Exhibits 42-43). (Undersigned counsel redacted account numbers and phone numbers on the copies of the charts and exhibits included in the Excerpts and Further Excerpts of Record, because they are not necessary to an understanding of the issues discussed in the brief. However, the jury received unredacted exhibits).
[19] 4-ER-565-66.
[20] 4-ER-587, 590.
[21] FER-005, 008, 019.
[22] 4-ER-587-90.
[23] FER-006, 025-26.
[24] 4-ER-590-91.

Indeed, when Agent Gomez was asked if he was "familiar with all the parameters of the case," he replied, "no, I'm not."[25] He described his role as follows:

> I specifically worked on the aspect that I was able to assist with after the fact, which was reviewing some of the phone information that was in Spanish, assisting with the victims and just coordinating with them, making sure they were okay, and just whatever Mr. Quisenberry [the case agent] additionally requested of me, but that was my primary role in this investigation as a co-case, coming in after the fact.[26]

Therefore, the record does not establish that Agent Gomez had any greater capacity to interpret the messages than the jurors, who were fully capable of reading and interpreting the chart themselves.

Under this Court's precedent, Agent Gomez's opinions about the meaning of these messages were improper because—given his limited involvement in the investigation—those opinions lacked sufficient foundation and merely told the jury what conclusion to reach about the defendant's culpability. *United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014) (explaining that officer's lay opinions in interpreting recorded conversations may be helpful to the jury if they are based on "months or even years of experience with the events, places, and individuals involved in the investigation."). In *Gadson*, the defendants were arrested in May 2011 and indicted the next month. *Id.* at 1198. The officer's lay

---

[25] 4-ER-593.
[26] 4-ER-593.

14

opinion testimony interpreting recorded conversations was admissible because the officer "had been involved in the investigation of the drug conspiracy since early 2010," and "his involvement spanned the searches of [a house important to the investigation], the multi-day surveillance of [a second house important to the investigation], the search of the [second] house, and the review of around 100 hours of prison phone calls." *Id.* at 1209. *See also United States v. Kevin Freeman*, 498 F.3d 893, 904-05 (9th Cir. 2007) (police officer could provide lay witness opinion testimony regarding the meaning of statements in the defendant's intercepted phone calls because the testimony was based on the officer's "direct perception of several hours of intercepted conversations—in some instances coupled with direct observation of [the defendants]—and other facts he learned during the investigation."). Here, the record reflects that Agent Gomez did barely more than copy the extracted phone messages onto charts—charts which were admitted into evidence and which the jury was equally capable of reading and interpreting. Agent Gomez's interpretation of those messages therefore did not assist the trier of fact, in violation of Rule 701(b).

It is possible that Agent Gomez participated more broadly in the investigation in ways that he did not explain, but the jury was not apprised of any further involvement. Therefore, even if Agent Gomez in fact accumulated more knowledge about the events at issue in the messages he interpreted for the jury

through his participation in the investigation, neither the district court nor the jury was in a position to evaluate the basis of his opinions because the government did not establish an adequate foundation. *See United States v. Holguin*, 51 F.4th 841, 865-66 (9th Cir. 2022) (noting that foundation for agent lay testimony should be established showing by connection between officer's investigative activities and conclusions but declining to find plain error under the circumstances); *United States v. Hampton*, 718 F.3d 978, 981-82 (D.C. Cir. 2013).

*United States v. Dorsey*, No. 19-50182, 2024 WL 4966060 (9th Cir. Dec. 4, 2024) supports Lares's argument. In *Dorsey*, this Court held that a detective's lay opinions identifying the defendant and co-defendant as disguised robbers shown on surveillance video were inadmissible because "the jury had access to all the same evidence and, through the detective's narrative testimony, the jury had been directed to important details of that evidence they might otherwise have missed." *Id.* at *6. The same rationale applies in this case. It was not improper for Agent Gomez to point out significant messages between Lares and Rodriguez or the individuals with whom Lares discussed bank account information to ensure that the jurors would not overlook them when reviewing the exhibits. But Agent Gomez crossed the line when he provided his own interpretative spin on the messages. As in *Dorsey*, Agent Gomez's interpretations posed the very concerns that Rule 701's helpfulness requirement is designed to thwart: "weighing evidence already in front

16

of the jury, choosing a side, and spoon-feeding that conclusion to the jury." *Id.* at
*6 (citing *Gadson*, 763 F.3d at 1207-08). "Especially when provided by a law
enforcement officer," such opinions "can create unfair prejudice and discourage
jurors from drawing their own conclusions." *Id.* at *4.

As explained in the opening brief, Lares also maintains that Agent Gomez's
opinions were improper because he neither participated in the recorded
conversations nor directly perceived them as they were occurring. *See* OB at 42, 46
(citing *Hampton*, 718 F.3d at 981-83; *United States v. Grinage*, 390 F.3d 746, 750-
51 (2d Cir. 2004)). *See also United States v. Horsley*, 105 F.4th 193, 220 (4th Cir.
2024) (["W]e have repeatedly held that the personal knowledge requirement is not
satisfied by post-hoc assessments about a conversation one had not participated
in.") (citations omitted). He acknowledges that this argument is currently
foreclosed by Ninth Circuit precedent but raises the issue to preserve it for higher
review. *See Gadson*, 763 F.3d at 1208-09.

It was likewise improper for Agent Gomez to interpret the plain language
"we're inviting ourselves" as referring to hostage taking. Lares maintains that it is
improper for agents to opine on the meaning of plain language in statements, even
if the statements are ambiguous, as other circuits have held. *See* OB at 43, 45-46
(citing *United States v. Marcus Freeman*, 730 F.3d 590, 597 (6th Cir. 2013);
*Grinage*, 390 F.3d at 748-49, 750-51; *United States v. Peoples*, 250 F.3d 630, 639-

17

40 (8th Cir. 2001)). He acknowledges that the Ninth Circuit currently allows such lay interpretations, *see Gadson*, 763 F.3d at 1210-11, but raises the issue to preserve it for higher review.

### II.B.2.    Admission of the lay opinions violated Federal Rule of Evidence 403.

Even if Agent Gomez's testimony was admissible as a lay opinion under Rule 701, it should have been excluded under Rule 403 because any probative value was substantially outweighed by the risk of unfair prejudice and the potential to mislead and confuse the jury. Given Agent Gomez's description of his limited role in the investigation, the jury presumably had before it all the evidence upon which Agent Gomez based his opinions, namely the text of the messages in the phone communications. Opinion testimony does not hold much probative value when, as here, the jury "is well suited" to resolve the issues on its own. *Diaz v. United States*, 602 U.S. 526, 553-54 (2024) (Gorsuch, J., dissenting) (noting the importance of weighing probative value against the potential for unfair prejudice under Rule 403 when determining the admissibility of law enforcement opinions). *See also Dorsey*, 2024 WL 4966060, at *4 (when the jury has access to the same evidence, a law enforcement officer's opinions "can create unfair prejudice and discourage jurors from drawing their own conclusions."). *Compare United States v. Barrett*, 703 F.2d 1076, 1086 (9th Cir. 1983) (lay-opinion identification testimony was highly probative and did not violate Rule 403 because defendant's

18

appearance had changed significantly since the offense and the lay witness—who identified the defendant as the person in surveillance video—was familiar with his appearance over time).

Such gratuitous law-enforcement opinions pose a danger of unfair prejudice because juries are naturally inclined to infer that "the officer's 'opinion about the criminal nature of the defendant's activity is based on knowledge of the defendant beyond the evidence at trial.'" *United States v. Lipscomb*, 14 F.3d 1236, 1242 (7th Cir. 1994) (quoting *United States v. Alvarez*, 837 F.2d 1024, 1030 (11th Cir. 1988)). *See also United States v. Vera*, 770 F.3d 1232, 1243 (9th Cir. 2014) (citing *Hampton*, 718 F.3d at 981-82) (noting risk that jury will improperly defer to officer's lay opinion). The danger of unfair prejudice is amplified when, as here, the district court fails to instruct the jury on the multifaceted dimensions of a law enforcement officer's testimony. *Vera*, 770 F.3d at 1243; *Lipscomb*, 14 F.3d at 1242.

The issue here is nothing like what happened in *United States v. Haischer*, 780 F.3d 1277, 1282 (9th Cir. 2015), upon which the government relies. In *Haischer*, the court excluded evidence *offered by the defendant* that her partner forced her to sign fraudulent loan papers before he would take her to the doctor to treat her broken leg, which was probative of whether she had the requisite knowledge and intent to commit fraud and "strongly supported" one of her primary

defenses. *Id.* It did not involve a law enforcement officer's lay opinion about the meaning of words in text messages that the jurors were equally capable of evaluating themselves.

Therefore, the district court should have excluded Agent Gomez's lay opinions under Rule 403.

### II.B.3. The district court plainly erred in failing to provide an instruction on Agent's Gomez's multifaceted testimony.

The government avers that Agent Gomez did not provide any expert opinions. Specifically, it contends that Agent Gomez's explanation about "the antenna" was not an expert opinion, because it was based on what other agents had told him. AB at 33. But that, by definition, is expert testimony, because it was based on Agent Gomez's "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. He knew what the term meant because of his experience working on human-smuggling cases in the area. But for the expert nature of the testimony, it would have been inadmissible hearsay. Agent Gomez's testimony about the meaning of "the antenna" was very similar to a law enforcement agent explaining the meaning of drug jargon, which this Court correctly characterizes as expert testimony. *Kevin Freeman*, 498 F.3d at 901.

And, contrary to the government's argument, it *did* present Agent Gomez as an expert witness. Otherwise, there would have been no reason to establish his

qualifications and experience beyond his role in this case. At the outset of direct examination, the government elicited his prior law enforcement experience, his six-year tenure with Homeland Security Investigations, that he successfully completed the training needed to become a federal agent, and that he was "a sworn law enforcement officer."[27] Even if the government did not intend to use Agent Gomez as an expert witness, the jurors did not know that. The first thing the prosecutor did was to establish his experience and qualifications, which would naturally cause the jury to view him as more than a typical lay witness.

Lares acknowledges that only a small portion of Agent Gomez's testimony was in the form of an expert opinion. But, given that the prosecutor bolstered Agent Gomez's stature by highlighting his bona fides as a law enforcement officer, it was especially important to instruct the jury that they should not give special weight to his fact and lay opinion testimony. The Ninth Circuit's model instruction informs the jury that, "when considering [the witness's] lay opinion testimony, you should not give it any extra credence based on the specialized knowledge, skill, experience, training, or education of this witness." Ninth Circuit Model Criminal Jury Instruction 3.15 (March 2023).

The prejudice from the failure to give an instruction explaining how to evaluate Agent Gomez's lay opinion testimony was exacerbated by the dual-role

---

[27] 4-ER-556-57.

instruction given in relation to Agent Hernandez, who testified as an expert and fact witness.[28] That instruction advised the jury that "opinion testimony is allowed because of the education or experience of the witness."[29] Providing this instruction, without providing another instruction tailored to Agent Gomez's testimony, invited the jury to give his lay opinions more weight than they deserved because of his education and experience—highlighted by the prosecutor at the outset of direct examination.

Therefore, the district court plainly erred in failing to give an instruction addressing the multifaceted nature of Agent Gomez's testimony as an expert, fact witness, and lay opinion witness. *Holquin*, 51 F.4th at 864; *United States v. Rodriguez*, 971 F.3d 1005, 1018 (9th Cir. 2020).

**II.C.  The errors prejudiced Lares.**

The jury's acquittal of Lares of hostage taking, including under an aiding and abetting theory, strongly suggests that it was not convinced beyond a reasonable doubt that he knew about the conspiracy to hostage take. The evidence that Lares knew of the hostage-taking conspiracy was slim. But, as previously explained, there is a chance that the jury's acquittal on hostage taking and conviction on conspiracy to hostage take reflected a compromise. *See* OB at 47-48.

---

[28] 2-ER-103.
[29] 2-ER-103.

In that event, the opinions of Agent Gomez challenged in this appeal—in essence, that Lares's messages with Rodriguez showed he knew very well that Rodriguez was engaged in hostage taking—went to the central issue of the case: whether Lares knew about the conspiracy to hostage take or instead believed that he was merely conspiring to transport undocumented persons for profit. As such, the erroneous admission of these opinions prejudiced Lares, whether reviewed for harmless or plain error. *See* OB 48 (citing standards). The district court's failure to give an instruction on the multifaceted nature of Agent Gomez's testimony compounded the prejudice.

The government asserts that the evidence against Lares was overwhelming; it points to Lares's collection of bank account information, his transportation of the victims to the Home Depot while armed and wearing a mask and hat, his possession of the victim's phones, his release of the victims only after receiving a call confirming the ransom had been paid, and his flight from police. AB at 34-35. But if the jury had believed this evidence showed that he knew of the hostage-taking conspiracy, it likely would have convicted him of hostage taking. The evidence is just as readily consistent with transporting undocumented persons for profit.

23

**III.    Lares's conviction for prohibited possession by a felon must be vacated because the statute is unconstitutional, both facially and as applied to him.**

As the government acknowledges, Lares has been convicted of only nonviolent felonies. *See* AB at 38. As such, even if 18 U.S.C. § 922(g)(1) is constitutional on its face, it is unconstitutional as applied to him, as explained in the opening brief.

After the filing of that brief,  the Supreme Court upheld the constitutionality of 18 U.S.C. § 922(g)(8)—which prohibits firearm possession by an individual subject to a domestic violence restraining order that includes a finding that he "represents a credible threat to the physical safety of an intimate partner"—as applied to an individual who had been found by a court to pose such a threat based on acts including a physical assault and the related firing of a gun. *United States v. Rahimi*, 602 U.S. 680, 684 (2024).

In so holding, the Supreme Court emphasized that the firearm prohibition it upheld was not permanent, as § 922(g)(8) "only prohibits firearm possession so long as the defendant 'is' subject to a restraining order." *Rahimi*, 602 U.S. at 699. It also underscored that a court had found that Rahimi posed a credible threat to another's physical safety and that "our Nation's tradition of firearm regulation distinguishes citizens who have been found to pose a credible threat to the physical safety of others from those who have not." *Id.* Indeed, the Court specified that

24

§ 922(g)(8) may be constitutionally applied because it "presumes . . . that the Second Amendment right may only be burdened once a defendant has been found to pose a credible threat to the physical safety of others." *Id.* at 700.

Although *Rahimi* did not decide the constitutionality of the felon-in-possession statute at issue here, 18 U.S.C. § 922(g)(1), it portends that the Supreme Court will ultimately hold that this statute's permanent ban on firearm possession is unconstitutional, at least as applied to individuals such as Lares, who had not been found to pose a threat to the physical safety of another. Given its permanent firearm prohibition and the non-violent felony offenses it encompasses, § 922(g)(1) is facially unconstitutional under *Rahimi*'s reasoning.

As the government notes, this Court is rehearing en banc *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), decided after the filing of Lares's opening brief, which held that § 922(g)(1) was unconstitutional as applied to a non-violent felon. *See United States v. Duarte*, No. 22-50048, 2024 WL 3443151, at *1 (9th Cir. July 17, 2024). After the en banc Court rules, Lares will fill a notice of supplemental authority or request supplemental briefing, as appropriate.

**IV.    Remand for resentencing is required because the district court imposed sentencing enhancements based on acquitted conduct.**

Lares relies on the arguments presented in his opening brief.


## CONCLUSION

For the foregoing reasons, as well as those presented in the opening brief, this Court should vacate Lares's convictions for conspiracy to hostage take and for prohibited possession of a weapon. Alternatively, it should remand for resentencing.


Dated December 18, 2024.


JON M. SANDS
Federal Public Defender

*s/ M. EDITH CUNNINGHAM*
M. EDITH CUNNINGHAM
Assistant Federal Public Defender


26

## STATEMENT OF RELATED CASES

The issue in this case of whether Appellant's conviction under 18 U.S.C.

§ 922(g)(1) violates the Second Amendment is related to *United States v. Duarte*,

Ninth Cir. No. 22-50048.

# CERTIFICATE OF COMPLIANCE

**9th Cir. Case Number No. 23-1096**

I am the attorney or self-represented party.

**This brief contains** <u>5,711</u> **words**, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

x   This brief complies with the word limit of Cir. R. 32-1.

☐   is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐   is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5),

Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐   is for a death penalty case and complies with the word limit of Cir. R. 32-4.

☐   complies with the longer length limit permitted by Cir. R. 32-2(b) because (select only one):

☐   it is a joint brief submitted by separately represented parties;
☐   a party or parties are filing a single brief in response to multiple briefs; or
☐   a party or parties are filing a single brief in response to a longer joint brief.

☐   complies with the length limit designated by court order dated          .

☐   is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Dated: December 18, 2024                    *s/ M. Edith Cunningham*
                                            M. Edith Cunningham